Filed 10/30/23  P. v. Reed CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JIMMY LEE REED,<br><br>    Defendant and Appellant. | F084268<br><br>(Tulare Super. Ct. No. VCF398368)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Nathan G. Leedy, Judge.

Richard M. Oberto for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench, and Jamie A. Scheidegger for Plaintiff and Respondent.

-ooOoo-

Defendant Jimmy Lee Reed was convicted by a jury of one count of attempted murder, one count of assault with force likely to produce great bodily injury (GBI), one count of domestic violence, and one count of attempted criminal threats. The jury also found true the enhancement that defendant had inflicted GBI in circumstances involving domestic violence. In bifurcated proceedings, the trial court found true that defendant had two prior strike convictions for purposes of the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)),[1] which also qualified as serious felony convictions. After the verdict, the trial court denied a motion to dismiss the two prior strikes and the GBI enhancement. The court sentenced defendant to a total term of 30 years to life imprisonment. On appeal, defendant contends that the trial court erred by: (1) not dismissing the GBI enhancement; (2) imposing the upper term sentence of five years on the GBI enhancement; and (3) failing to stay the attempted criminal threats offense pursuant to section 654. We vacate defendant's sentence and remand for resentencing. In all other respects, we affirm.

## PROCEDURAL BACKGROUND

On March 26, 2021, the Tulare County District Attorney filed an information charging defendant with: one count of attempted murder (§§ 664, 187, subd. (a); count 1); one count of assault by means of force likely to produce GBI (§ 245, subd. (a)(4); count 2); one count of domestic violence against someone with whom defendant had a former dating relationship (§ 273.5, subd. (a); count 3); and one count of attempted criminal threats (§§ 664, 422; count 4).[2] For all counts, the information alleged that defendant had suffered two prior strike convictions (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). The information alleged that these two strikes also each

---

[1] All further statutory references are to the Penal Code unless otherwise noted.
[2] Count 4 originally alleged criminal threats. During trial, the trial court granted a defense motion to acquit on count 4 as charged but permitted the prosecutor to amend count 4 to allege attempted criminal threats.

2.

qualified as prior serious felony convictions (§ 667, subd. (a)(1)).  Also, for all counts, the information alleged that defendant committed the offense while on parole (§ 1203.085, subds. (a), (b)).  For counts 1 through 3, the information alleged that defendant personally inflicted GBI under circumstances involving domestic violence (§ 12022.7, subd. (e)).  Finally, with respect to count 1, the information alleged that defendant acted willfully, deliberately, and with premeditation (§ 664, subd. (a)).

On May 27, 2021, the jury found defendant guilty on all four counts.  With respect to count 1, the jury found not true the allegation that defendant acted willfully, deliberately, and with premeditation.  For counts one through three, the jury found true the enhancement that defendant personally inflicted GBI in circumstances involving domestic violence.  In a bifurcated proceeding, the trial court found not true that defendant had committed the offenses while on parole but found true the allegations that defendant had two prior strike convictions which also qualified as serious felony convictions.

On April 8, 2022, the trial court sentenced defendant on count 1 to a total term of 30 years to life (25 years to life for a third strike (§ 667, subd. (e)(2)(A)(ii)), plus the upper term of five years for the GBI enhancement (§ 12022.7, subd. (e)).  The court sentenced defendant to 25 years to life on counts 2 through 4, stayed counts 2 and 3 pursuant to section 664, and ordered count 4 to run concurrently with count 1.  Prior to sentencing, the court denied a motion to dismiss the two prior strikes and the GBI enhancement but did not impose the enhancements for the two prior serious felony convictions (§ 667, subd. (a)(1)).

## FACTUAL BACKGROUND

On May 21, 2020, defendant and his ex-girlfriend, K.H., were texting while K.H. was getting gas at a local gas station.  K.H. testified that she and defendant were an "on-again, off again" couple and that she had agreed that they might "hang out" together that night, even though they both were currently dating other people.  As K.H. was pumping

3.

gas, defendant arrived at the gas station. Defendant and K.H. began to argue. K.H. testified that she was going to leave, but defendant insisted that she give him a ride. K.H. eventually relented, and the two left the gas station in K.H.'s car. K.H. and defendant quickly began arguing about his new girlfriend and how his new girlfriend had been hit by her old boyfriend. When K.H. said that defendant used force against her (just about everything short of using his fist), defendant denied that he had done so and said, " '[T]his is what it is like for me to hit you.' " Defendant then started punching and choking K.H. K.H. estimated that defendant punched her about five times. K.H. was struggling to drive while defendant was attacking her, a task made more difficult because her right hand was in a cast. K.H. began seeing white and tried to claw at defendant's face with her left hand. Defendant "let up" on his assault, and K.H. "slammed" on the brakes. Defendant then told K.H. that he would bury K.H. with Armando, a recently deceased boyfriend. Defendant punched and began choking K.H. again. K.H. testified that she again began to see white and spots, and she could not breathe. K.H. passed out but awoke when she heard the "thump" of her car door slamming. K.H. was slumped over and saw defendant running away.

K.H. testified that she then drove herself home, where her roommate called the police. The police took photos of K.H. and then called for an ambulance. The EMT's examined K.H. K.H.'s face was bruised and swelling, she had bruising around her neck and over other parts of her body, the cast on her right arm was broken, blood had come out of her ears, and the EMT's said that she had a concussion.

**DISCUSSION**

I.      **Section 654**

    A.      *Parties' Arguments*

Defendant argues that the trial court erred by not staying the sentence on count 4 pursuant to section 654. The attempted criminal threats offense was part of the same course of conduct as the attempted murder offense. Both crimes involved the same

4.

overarching objective to inflict physical and emotional harm on K.H. because defendant threatened to kill K.H. while he was choking her.

The People argue that the trial court properly found that defendant harbored two intents, the intent to kill for count 1 and the intent to threaten for count 4. The attempted threat did not further or promote the attempted murder, and defendant could have attempted to murder K.H. without saying anything to her. Therefore, substantial evidence supports the court's conclusion that defendant had separate objectives.

We agree with the People that substantial evidence supports the trial court's finding that counts 1 and 4 are not part of an indivisible course of conduct.

## B.     *Additional Information*

During closing argument, the prosecutor addressed the basis for count 4. The prosecutor explained: "So what is the criminal threats? The defendant threatened to kill or cause great bodily injury. 'I'm gonna bury you with Armando,' seems pretty clear-cut and dry that was a threat to kill. [¶] [T]he defendant intended his statement be taken as a threat. How else could you take it? Has his hands around her throat telling her what he's going to do in the next few moments."

During sentencing, defense counsel argued that count 4 was part of count 1 and that section 654 required the sentence on count 4 be stayed. The trial court responded that the attempted murder and attempted criminal threats were part of the same course of conduct but involved separate and distinct acts. Defense counsel countered that the same intent was involved for both offenses. The court disagreed and explained: "It's different intent. The intent involved in [c]ount 4 is the intent to threaten somebody. The intent involved in [c]ount 1 is to kill somebody."

## C.     *Legal Standard*

Section 654 prohibits "multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) When applicable, section 654 precludes the imposition of concurrent sentences. (*People v. Duff*

5.

(2010) 50 Cal.4th 787, 796.) "Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective." (*People v. Corpening* (2016) 2 Cal.5th 307, 311; see *People v. Kopp* (2019) 38 Cal.App.5th 47, 90, review granted Nov. 13, 2019, S257844.) The first inquiry is whether the crimes were completed by a single physical act. (*Corpening*, at p. 311; *Kopp*, at p. 90.) The second inquiry is, if a single physical act is not involved, whether the crimes involve an indivisible course of conduct. (*Corpening*, at p. 311; *People v. Washington* (2021) 61 Cal.App.5th 776, 795.) It is the defendant's intent and objective, not the temporal proximity of the offenses, that determine if there is an indivisible course of conduct. (*People v. Hicks* (1993) 6 Cal.4th 784, 789; see also *People v. Jackson* (2016) 1 Cal.5th 269, 354.) If the defendant harbors a single intent and criminal objective, then section 654 will apply and permit punishment for only a single offense. (*Jackson*, at p. 354; *Kopp*, at p. 90.) Where the offenses were merely incidental to or were the means of accomplishing or facilitating one objective, the defendant will be found to have harbored but a single intent. (*Hicks*, at p. 789.) If the defendant harbors multiple intents and criminal objectives, then section 654 will not apply, and the defendant may be punished for each offense. (*Jackson*, at p. 354; *Kopp*, at p. 90.)

A trial court's section 654 determinations, either express or implied, will be affirmed if they are supported by substantial evidence. (*People v. Brents* (2012) 53 Cal.4th 599, 618; *People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.) Substantial evidence is evidence that is reasonable, credible, and of solid value. (*People v. Armstrong* (2016) 1 Cal.5th 432, 450.) The evidence is examined in the light most favorable to the section 654 determination. (*Vasquez*, at p. 737; see also *Armstrong*, at p. 450.)

**D.** *Analysis*

There is no dispute, and the record clearly shows, that the basis for count 4 was defendant's statement to K.H., which was made while defendant was attacking K.H., that he was going to bury her with her recently deceased boyfriend, Armando. The parties agree that the issue is whether counts 1 and 4 involve an indivisible course of conduct, but dispute whether defendant harbored multiple intents and objectives in committing the offenses.

The intent required to commit the crime of attempted murder is the specific intent to kill. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.) The intent required to commit the crime of attempted criminal threats is the specific intent to threaten to commit a crime resulting in death or GBI, with the further intent that the threat be taken as a threat. (*People v. Chandler* (2014) 60 Cal.4th 508, 516.) As *Covarrubias* and *Chandler* show, defendant plainly harbored different criminal intents when he attempted to murder K.H. and when he attempted to criminally threaten K.H.

With respect to objectives, the objective of an attempted murder is to kill the victim, which is a physical harm/injury. (See *People v. Perez* (1979) 23 Cal.3d 545, 551 [explaining that a defendant could not be punished for both attempted murder and arson where the objective was to kill, and the arson was the means of killing].) The objective of a criminal threat, however, is not to actually kill or cause GBI, rather the object is to inflict fear or mental distress. (*Ayala v. Superior Court* (2021) 67 Cal.App.5th 296, 304; see *People v. Solis* (2001) 90 Cal.App.4th 1002, 1024 [describing the offense of criminal threats as a crime of " '*mental terror*' " and "psychic violence"].) It has been recognized that the objective to cause mental distress is distinct from the objective to inflict physical harm. (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 95; *People v. Mejia* (2017) 9 Cal.App.5th 1036, 1047.)

Here, defendant punched and choked K.H., briefly stopped and told K.H. that he was going to bury her with Armando, and then continued to hit and strangle K.H. The

7.

threat was not a means of committing the attempted murder, nor did the threat do anything to further the attempted murder. If the attempted murder of K.H. was committed in exact conformity with defendant's actions except that the attack was performed in silence, we agree with the People that the crime of attempted murder would still be complete. Indeed, K.H.'s testimony indicates that as defendant was attacking her, he said very little. The only purpose or object that is apparent from defendant threatening to bury K.H. with Armando was to cause K.H. some form of fear or mental distress. Therefore, we conclude that the trial court's implicit determination that different objectives were involved regarding count 1 and count 4 is supported by substantial evidence. (*In re Raymundo M.*, *supra*, 52 Cal.App.5th at p. 95; *People v. Mejia*, *supra*, 9 Cal.App.5th at p. 1047.)

Defendant relies heavily on *People v. Sexton* (2019) 37 Cal.App.5th 457, to argue that he had one overarching objective to inflict physical and emotional harm on K.H. *People v. Sexton* involved multiple convictions against defendant Daniel Sexton for various domestic violence related offenses. As relevant to this case, Sexton was found guilty of inter alia domestic violence (§ 273.5, subd. (a)) and assault with force likely to cause GBI (§ 245, subd. (a)(4)). (*Sexton*, at p. 465.) Sexton had seized his wife by the throat, began choking her, and threatened to kill her. (*Id.* at p. 461.) When his wife tried to run, Sexton grabbed her by the hair and then continued to choke and threaten her. (*Ibid.*) The trial court sentenced defendant to two 2-year consecutive sentences for the domestic violence and assault offenses. (*Id.* at p. 465.) On appeal, Sexton argued that either the domestic violence or the assault conviction should have been stayed pursuant to section 654. (*Sexton*, at p. 460.) The People argued that the domestic violence offense corresponded to Sexton choking his wife with an objective of causing physical pain and that the assault offense corresponded to Sexton pulling his wife's hair with an objective of preventing her escape. (*Id.* at p. 471.) The court of appeal noted that during the entire incident, Sexton was choking and threatening his wife except for the brief period she

8.

broke free, after which Sexton pulled his wife by the hair and immediately resumed choking and threatening her. (*Id.* at pp. 471–472.) The court of appeal held that Sexton's overarching objective throughout the interaction was to harm his wife, and any subsidiary objectives such as regaining physical control, necessarily depended on the overarching objective. (*Id.* at p. 472.) Because Sexton's actions during the incident were not taken for a purpose other than the principal purpose of inflicting "physical and emotional harm," there was a single objective and section 654 applied. (*Sexton*, at p. 472.)

Sexton does not control. The conduct at issue for the domestic violence and assault offenses in that case involved at least two forms of physical violence, choking and hair pulling. Both actions inflicted physical harm on Sexton's wife. In such a circumstance, it makes sense to discuss Sexton's objective as one to "harm" his wife. Further, the court of appeal reviewed the actions of choking and hair pulling as part of a continuous transaction that involved constant physical attacks, interrupted only by a brief period where Sexton's wife attempted to escape. In contrast, the conduct for the two crimes at issue in this case involves physical actions (punching and choking/strangling) as well as verbal actions (threatening) by defendant against K.H. The former actions involved physical harm, while the latter actions involved mental harm. Further, defendant's threat served no purpose with respect to completing or aiding the attempted murder, unlike Sexton's actions. Moreover, although Sexton was also convicted of criminal threats, the *Sexton* court never discussed the possibility of distinct mental and physical harms and objectives, and no party raised such issues on appeal. Therefore, *Sexton* had no need to discuss the possible distinction between the objectives of the domestic violence offense as opposed to the objectives of the criminal threats offense. As noted above, other courts that have had to address the issue have concluded that the infliction of mental harm and the infliction of physical harm are generally two distinct criminal objectives for purposes of section 654. (*In re Raymundo M.*, *supra*, 52 Cal.App.5th at p. 95; *People v. Mejia*, *supra*, 9 Cal.App.5th at p. 1047.) Because

9.

*Sexton* involves different crimes, different issues, and different actions than those in this case, it does not aid defendant.

**I.      GBI Enhancement**

**A.      *Parties' Arguments***

Defendant contends that the trial court abused its discretion when it failed to dismiss the GBI enhancement pursuant to section 1385, subdivision (c)(2). Defendant argues that he established several factors that are entitled to "great weight" under this statute, including childhood trauma and abuse,[3] an improperly diagnosed and treated mental illness (bipolar disorder), victimization,[4] and the enhancement would lead to a sentence greater than 20 years. On the other hand, there was no basis to conclude that dismissing the GBI enhancement endangered public safety since he was already subject to a mandatory 25 years to life sentence. Defendant also argues that, in violation of section 1170, subdivision (b), the trial court relied on factors that were neither stipulated to nor found by a jury to be true beyond a reasonable doubt when it imposed the five-year upper term sentence.

The People respond that the trial court did not abuse its discretion by denying the motion to dismiss. Under section 1385, subdivision (c)(2), the listed mitigating factors do not apply if the court finds that striking the enhancements would endanger public safety. The court's refusal of defendant's request to either strike the GBI enhancement or impose the lower term, while noting that this was not the first time defendant had caused GBI, shows that it made an implicit finding under section 1385 that justice would not be furthered by dismissing the enhancement because of public safety concerns. The People

---

[3] Defendant's motion before the trial court explained that his father regularly beat him and his mother, he was forced to watch his father rape his mother, he had to have reconstructive surgery on his face due to his father beating him, was molested by a friend of his father, and as a minor he used alcohol and methamphetamine with his father.

[4] Defendant's motion argued that K.H. used him for security and provided him with money, attention, sex, and drugs.

10.

also respond that defendant forfeited any section 1170 error by not objecting and, in any event, the court properly relied on defendant's prior criminal history as reflected in the certified records of conviction, particularly that defendant had two prior felonies with GBI enhancements, to impose the five-year upper term.

We agree with defendant that the trial court erred, and that remand is necessary.

**B.** *Additional Background*

In November 2021, defense counsel filed a motion to dismiss the two prior strikes and the GBI enhancement. The motion highlighted mental illness, victimization, and significant physical and emotional childhood abuse. In February 2022, defense counsel filed a supplemental brief that highlighted the recently effective amendments to various sentencings laws, including section 1385 through Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721) (Senate Bill 81) and section 1170 through Senate Bill No. 567 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 731) (Senate Bill 567). The supplemental motion in part explained that the factors discussed and identified in his original motion were entitled to "great weight" as a result of Senate Bill 81, which further supported the conclusions that the enhancements should be dismissed. A second supplemental brief was filed in April 2022. The supplemental brief included a letter from defendant's sister that corroborated aspects of defendant's account of childhood abuse.

On April 8, 2022, the trial court held a sentencing hearing. The court noted that defendant had filed a motion for new trial and a motion to strike priors. After being invited to make comments in addition to his written submissions, defense counsel referenced Senate Bill 81 and concluded by requesting that the enhancements be dismissed. The court responded to defense counsel's comments with skepticism as to the application of the new sentencing amendments: "Counsel, the issue I see here for [defendant] is I don't think any of these new laws really apply to Mr. Reed. The [T]hree [S]trikes law is an alternative sentencing scheme. They're not enhancements within the technical meaning of that term." Defense counsel stated in part that there was still law

11.

under *Romero*.[5]  The court then responded:  "That's certainly true.  I just approach this as more of a traditional Romero analysis as opposed to a case that would fall under the ambit of these new changes in the law that you have referenced."  Defense counsel and the court then discussed Senate Bill 81's possible applicability to the Three Strikes law.  Defense counsel in part stated that if the court "goes forward" on the three-strike sentence, then the new sentencing amendments "don't change anything here."  However, defense counsel also maintained that "[Senate Bill] 81 applies here."  Just before the prosecutor responded to defense counsel's arguments, the court stated:  "I think [defense counsel's] position is noted for the record.  I just read the statute to not apply to [defendant] in this situation."  After hearing the prosecutor's position, which agreed with the court's view, the court denied the motion for new trial.  The court then stated:  "As to the sentencing issues, again, I find there is a traditional Romero analysis.  I don't find that the changes in the law [defense counsel] point to apply to [defendant] in … these circumstances for the reasons I set forth."

The trial court then addressed whether defendant fell outside the spirit of the Three Strikes law.  The court noted that defendant had made a "substantial showing of horrific circumstances in [his] childhood," which was uncontested by the People and corroborated by his sister.  Nevertheless, the court found that defendant's childhood alone was not enough to bring defendant outside the spirit of the Three Strikes law.  The court noted that the current offense was extremely violent and K.H. was hurt significantly.  The court further noted that defendant's criminal history dated back to 1993 and reflected constant interaction with the criminal justice system, including repeated acts of violence that caused injury to other members of the public.  While defendant's childhood was "awful," the court held that it was apparent that defendant "poses a clear and present danger to the members of this community, and this does not fall outside the spirit of the [T]hree

---

[5] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

[S]trikes law, as [evidenced] by this current case and repeated acts of violence in the past. [¶] The motion to strike the strike priors is denied."

The trial court then explained that it intended to impose a sentence of 25 years to life, plus five years for the GBI enhancement, but would not impose 10 consecutive years for the two nickel priors because "30 to life, given [defendant's] present age, is plenty." Defendant was 47 at the time of sentencing. After the court explained it intended to sentence defendant to 30 years to life, defense counsel reiterated the positions as stated in his briefing and requested the court reconsider its decision to impose the upper term on the GBI enhancement. Defense counsel requested that the court either strike the enhancement or impose the lower term of three years. The court responded to counsel: "I intend to impose the five years. This is not the first time [defendant] has caused great bodily injury to someone. It was alleged and apparently sustained in the carjacking case in 1998 and again in the jail assault case in 2003."

### C. *Legal Standards*

#### 1. Section 1385, Subdivision (c)

Effective January 1, 2022, California law provides that a trial court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1); *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295 (*Mendoza*); *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1093–1094, review granted Apr. 12, 2023, S278894.) In exercising its discretion under subdivision (c)(1), a trial court "shall consider and afford great weight to evidence offered by the defendant" to prove one of nine enumerated mitigating circumstances. (§ 1385, subd. (c)(2); *Mendoza*, at pp. 295–296; *Ortiz*, at pp. 1093–1094.) "Proof of the presence of one or more of these [mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2); *Mendoza*, at p. 299; *Ortiz*, at pp. 1093–1094.) The term "endanger public safety" is statutorily defined as "a

13.

likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2); *Mendoza*, at pp. 295–296; *Ortiz*, at pp. 1093–1094.) There is no requirement for the trial court to consider particular factors in determining whether dismissal would endanger public safety. (*Mendoza*, at p. 299.) Together, section 1385, subdivisions (c)(1) and (c)(2) establish the following: (1) the trial court has discretion to dismiss sentencing enhancements in the interests of justice; (2) certain mitigating circumstances weigh greatly in favor of dismissal; and (3) a finding of danger to public safety will overcome the mitigating circumstances. (See *Mendoza*, at pp. 295–297; *People v. Anderson* (2023) 88 Cal.App.5th 233, 239, review granted Apr. 19, 2023, S278786; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18.)

A trial court's decision whether to dismiss an enhancement pursuant to section 1385, subdivision (c), is reviewed for an abuse of discretion. (*Mendoza*, *supra*, 88 Cal.App.5th at p. 298.) A trial court abuses its discretion if it acts so irrationally or arbitrarily that no reasonable person could agree with its refusal to dismiss the prior conviction. (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377; see *Mendoza*, at p. 299.) A trial court also abuses its discretion by basing its decision on an impermissible consideration or on an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156; see also *People v. Nakano* (2023) 89 Cal.App.5th 623, 635 [noting that an abuse of discretion occurs when the trial court applies the " 'wrong legal standard' "].) " " 'Defendants are entitled to sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court.' " " (*People v. Flores* (2020) 9 Cal.5th 371, 431 (*Flores*); *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)

### 2.    Section 1170, Subdivision (b)

Effective January 1, 2022, "when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if jury is waived) beyond a

reasonable doubt, or (3) based on prior convictions evidenced by a certified record of conviction." (*People v. Jones* (2022) 79 Cal.App.5th 37, 44; see § 1170, subd. (b).) However, while a court may rely on certified records of conviction without submitting them to the jury, that exception "does not apply to enhancements imposed on prior convictions." (§ 1170, subd. (b)(3).)

### 3. Harmlessness

If a trial court's sentencing choice is based on an erroneous understanding of the law, then generally the matter must be remanded for the trial court to make an informed determination. (*People v. El* (2021) 65 Cal.App.5th 963, 966; *People v. Leon* (2016) 243 Cal.App.4th 1003, 1023; see also *Flores*, *supra*, 9 Cal.5th at p. 432; *Gutierrez*, *supra*, 58 Cal.4th at p. 1391.) Remand is not required, however, if the record " ' "clearly indicate[s]" ' " that the trial court would have reached the same conclusion under the law as it actually exists. (*Flores*, at p. 432; *Gutierrez*, at p. 1391; see *People v. Banner* (2022) 77 Cal.App.5th 226, 242.)

### D. *Analysis*

#### 1. Section 1385, Subdivision (c)

##### a. *Abuse of Discretion*

Defendant contends that the trial court had no rational basis to deny his motion to strike the GBI enhancement. The People contend that the court's rejection of defense counsel's request to strike the GBI enhancement and its reliance on two prior occasions of GBI to justify a five-year sentence was in implicit determination that granting dismissal would endanger public safety and would not be in the interests of justice. Both positions accept, either through a silent assumption (the defendant) or through reliance on alleged implicit findings (the People), that the court actually applied section 1385, subdivision (c), to the GBI enhancement. After reviewing the record, we are not convinced that the court followed or made any findings under section 1385, subdivision (c).

As described in detail above, the trial court no less than three times expressed the opinion that Senate Bill 81's amendments did not apply to defendant, and expressly held that none of the new sentencing amendments identified by defense counsel, which clearly included Senate Bill 81, applied to the sentencing issues raised by defendant. Rather, the court stated that the sentencing issues involved what it termed to be a "traditional *Romero*" analysis. The court expressed no caveats or limitations in this conclusion.

The trial court's analysis of the motion to strike was also consistent with its holding that Senate Bill 81 did not apply. The trial court relied on the facts and circumstances of the current offenses and defendant's substantial criminal history (which included violent felonies and the infliction of GBI on others) and recognized that defendant's childhood was "horrific" and "awful," but concluded that defendant did not fall outside the spirit of the Three Strikes law. This was a proper *Romero* analysis.[6] (See *People v. Williams* (1998) 17 Cal.4th 148, 161 [holding that dismissal a prior strike is appropriate upon a finding that the defendant falls outside the spirit of the Three Strikes law and identifying factors to consider in making the determination].) The court later noted two prior GBI enhancements. In contrast, the court did not purport to make findings pursuant to section 1385, subdivision (c), or use that subdivision's key terms. For example, the court did not cite to section 1385, subdivision (c), did not use the term

_____

[6] We note that the trial court's analysis under *Romero* with respect to the prior strikes was appropriate both pre- and post-Senate Bill 81. Senate Bill 81 did not materially change section 1385, subdivision (a), (cf. § 1385, former subd. (a) with § 1385, subd. (a).), which is the statutory basis for a motion to dismiss a prior strike. (*Romero, supra*, 13 Cal.4th at pp. 529–530.) Senate Bill 81 amended section 1385, subdivision (c), to expressly address "enhancements" and guide a court's discretion. (*People v. Ortiz, supra,* 87 Cal.App.5th at pp. 1093–1094.) The judicially established definition of an "enhancement" is " 'an *additional term* of imprisonment added to the base term.' " (*People v. Jefferson* (1999) 21 Cal.4th 86, 101; see *People v. Burke* (2023) 89 Cal.App.5th 237, 243.) The Three Strikes law is an alternative sentencing scheme; a strike is not an enhancement. (*People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn.2; *Burke*, at p. 243.) Therefore, the Three Strikes law is not subject to amended section 1385, subdivision (c). (*Tilley*, at p. 776, fn.2; *Burke*, at p. 243.)

"great weight," did not use the term "interests of justice," did not identify any of the nine mitigating circumstances of section 1385, subdivision (c)(2), even though at least three of those circumstances appear to apply to defendant (§ 1385, subds. (2)(C), (D), (E)), and did not state that striking the GBI enhancement would "endanger public safety."[7]

The People argue that the trial court made an implicit finding under section 1385, subdivision (c), that it would not be in the interests of justice, and the public would be endangered, if the GBI enhancement was dismissed. However, this argument is contrary to the record. Senate Bill 81's application was raised as part of defendant's supplemental motion/sentencing memorandum and at oral argument, and defendant's original motion sought the dismissal of the strikes and the GBI enhancement. The court clearly stated that the new laws did not apply to the sentencing issues raised by defendant, which means that the court rejected Senate Bill 81's application with respect to the GBI enhancement.

It is true that defense counsel stated that he reiterated the arguments of his written submissions and, "as a point of emphasis," asked the court to reconsider the five-year upper term for the GBI enhancement and instead either strike the enhancement or sentence to the lower term. The court implicitly declined the renewed request to strike the enhancement. The court did not explain why it chose not to strike the GBI enhancement or mention section 1385, subdivision (c), but did explain why it was imposing the five-year upper term. The court's response indicates that it was neither dismissing the GBI enhancement nor changing its original analysis. Again, the court disposed of the motion to strike and resolved defense counsel's objections by conducting a *Romero* analysis and noting that defendant had two prior convictions involving GBI. Further, the appropriate considerations for imposing an upper term sentence are not

---

[7] We do not hold that a sentencing court is required to use exact phrases in order to make valid section 1385, subdivision (c), determinations. However, given the trial court's express ruling that the new sentencing amendments did not apply, the failure to identify the statute or use key statutory language further shows that section 1385, subdivision (c), was not followed.

17.

necessarily the same as the considerations for declining to dismiss an enhancement under section 1385, subdivision (c). The analytical framework for choosing either the lower, middle, or upper term is provided by section 1170 and is based on consideration of aggravating factors (that must be found true beyond a reasonable doubt as part of a jury or bench trial) and mitigating factors. (§ 1170, subd. (b).) In contrast, section 1385, subdivision (c), requires a trial court to determine the interests of justice by examining enumerated factors and considering whether the public would be endangered as a result of dismissing the enhancement. (§ 1385, subd. (c).) Given the court's express holdings, statements, and rationale, we cannot say that the court made any implicit findings with respect to section 1385, subdivision (c).

We also recognize that the trial court concluded as part of its *Romero* analysis that defendant was a "clear and present danger to the members of this community." Admittedly, this language is very close to section 1385, subdivision (c)(2)'s "endanger public safety" exception. However, this statement was part of a sentence in which the court held that defendant was not outside the spirit of the Three Strikes law. The statement is a justification for finding that dismissal of the two prior strikes was not appropriate and that the more stringent baseline sentences established by the Three Strikes law were justified. Moreover, the "clear and present danger" statement was made after the court expressly stated that it would not follow the framework established by the new laws, which included section 1385, subdivision (c). This means that the court did not afford great weight to any of the statutorily identified mitigating factors, nor did the court have to consider whether striking the enhancement (which unlike the two prior strikes would not implicate an alternative sentencing scheme) would result in physical injury or other serious danger to others. If the relevant factors were not weighed as mandated, and the effect of the enhancement not specifically considered, then a finding of "clear and present danger" cannot substitute for a finding of "public endangerment" under section 1385, subdivision (c). For these reasons, we conclude that the court's

"clear and present danger" comment was not a finding under section 1385, subdivision (c)(2), and could not be an equivalent finding of "public endangerment" under that section.**8**

We acknowledge that in the face of a silent record it is presumed that a trial court correctly followed the applicable the law. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378; *People v. Sullivan* (2007) 151 Cal.App.4th 524, 549; *People v. Gillispie* (1997) 60 Cal.App.4th 429, 434.) However, the record in this case is not silent. The record affirmatively shows that the trial court held that the new sentencing laws, and thus section 1385, subdivision (c), did not apply to defendant, and the court's analysis did not indicate that section 1385, subdivision (c), was applied to defendant. Because the record affirmatively demonstrates that the court failed to apply section 1385, subdivision (c), to the GBI enhancement, we conclude that the trial court abused its discretion. (*People v. Nakano*, *supra*, 89 Cal.App.5th at p. 635.)

### b. *Harmlessness*

Although we have found an abuse of discretion, we will not remand if the record clearly indicates that the trial court would have made the same decision under section 1385, subdivision (c). (*Flores*, *supra*, 9 Cal.5th at p. 432; *Gutierrez*, *supra*, 58 Cal.4th at p. 1391.) We have reviewed the record and cannot conclude that it clearly indicates the trial court would have refused to dismiss the GBI enhancement if the court had applied section 1385, subdivision (c).

The record shows that the subdivision (c)(2)(C) mitigating factor of a resulting sentence over 20 years due to the GBI enhancement applies and is thus, entitled to "great weight." (§ 1385, subd. (c)(2)(C).) Further, while additional findings by the court would need to be made, it appears that subdivision (c)(2)(D) (offenses connected to mental

---

**8** Again, we recognize that the trial court was aware of defendant's criminal record and was concerned about his dangerousness. However, the trial court's conclusion that Senate Bill 81 did not apply to defendant circumscribes the nature of our review.

illness) and subdivision (c)(2)(E) (offenses connected to childhood trauma) also apply. (§ 1385, subd. (c)(2)(D), (E).) It is thus, conceivable that the trial court could find that at least three statutory mitigating factors greatly weigh in favor of dismissal of the GBI enhancement.[9]

These factors would not be entitled to great weight, however, if the trial court concludes that dismissing the enhancement would endanger public safety. (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 296; *People v. Lipscomb*, *supra*, 87 Cal.App.5th at p. 18.) While the trial court has found that defendant was a "clear and present danger" to the community, that finding is based on defendant's present state and did not consider the sentence that defendant would face without the enhancement. The analysis of section 1385, subdivision (c), requires a court to consider the danger posed to the public if the court were to dismiss the *enhancement*. The court declined to dismiss the two prior strikes, a ruling which has not been challenged on appeal. Because the two strikes were not dismissed, defendant would be sentenced to 25 years to life as a third strike defendant even without the GBI enhancement. (§ 667, subd. (e)(2)(A)(ii).) Since defendant was given a little more than two years of presentence credit and he was 47 years old at the time of sentencing, presumably the earliest defendant could be paroled would be when he is around 70 years old. (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 34 [noting that a

---

[9] Defendant contends that dismissal of the GBI enhancement is mandatory under section 1385, subdivision (c)(2)(C). We disagree. Subdivision (c)(2)(C) identifies as a mitigating factor: "The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." (§ 1385, subd. (c)(2)(C).) Despite its use of the mandatory term "shall," the courts of appeal are in agreement that, in the full context of section 1385, subdivision (c), a trial court is not required to dismiss an enhancement through subdivision (c)(2)(C) if the court finds that dismissing the enhancement would endanger public safety. (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 297; *People v. Anderson*, *supra*, 88 Cal.App.4th at pp. 238–241, review granted; *People v. Lipscomb*, *supra*, 87 Cal.App.4th at p. 18.) Therefore, the fact that subdivision (c)(2)(C) may apply to defendant's case does not per se mandate dismissal of the GBI enhancement.

third strike defendant was not eligible for postsentence worktime credits against his indeterminate life sentence]; *In re Cervera* (2001) 24 Cal.4th 1073, 1080 [holding that a third strike defendant was not eligible for postsentence good conduct credits against his indeterminate life sentence].)  If the GBI enhancement is not dismissed, then presumably the earliest defendant could be paroled would be when he is around 75 years old.  In assessing the total sentence, the court found compelling defendant's age when it decided not to impose 10 consecutive additional years for the two nickel priors.  Given the advanced age that defendant would be either with or without the GBI enhancement upon possible release, as well as the court's consideration of age in its decision not to impose an additional 10 consecutive years, it is unclear how the court would view defendant's age and circumstances in relation to the GBI enhancement for purposes of assessing public endangerment under section 1385, subdivision (c).

In sum, we recognize that the trial court found that defendant fit within the spirit of the Three Strikes law and was at the time of sentencing a "clear and present danger to the community."  However, given the new framework required by section 1385, subdivision (c), as well as the rulings and comments made by the court and the evidence presented by defendant, we cannot conclude that the record clearly indicates that the court would still decline to dismiss the GBI enhancement if it applied section 1385, subdivision (c).  (*Flores*, *supra*, 9 Cal.5th at p. 432; *Gutierrez*, *supra*, 58 Cal.4th at p. 1391; *People v. El*, *supra*, 65 Cal.App.5th at p. 966.)

### 2.    Section 1170, Subdivision (b)

For the same reasons discussed above, we conclude that the trial court did not consider or apply amended section 1170, subdivision (b).  The court expressly held that the new laws did not apply to the sentencing issues raised by defense counsel.  Therefore,

we conclude that the court did not apply section 1170, subdivision (b), when it imposed the five-year upper term for the GBI enhancement.[10]

With respect to harmlessness, the trial court identified no facts that were found by the jury beyond a reasonable doubt when it imposed the upper term. The only rationale identified was that defendant had twice before committed crimes that involved GBI. While that information is reflected in the certified records of conviction, the section 1170, subdivision (b)(3), exception "does not apply to enhancements imposed on prior convictions." (§ 1170, subd. (b)(3).) Therefore, section 1170, subdivision (b)(3), prohibits the court from considering prior GBI enhancements through certified records of conviction alone. (*Ibid.*) Given the limitation of section 1170, subdivision (b)(3), and the sole reason identified by the court for imposing the upper term, we conclude that the record does not clearly indicate that the trial court would have imposed the five-year upper term even if it had followed section 1170, subdivision (b). (*Flores*, *supra*, 9 Cal.5th at p. 432; *Gutierrez*, *supra*, 58 Cal.4th at p. 1391; *People v. El*, *supra*, 65 Cal.App.5th at p. 966.)

### 3. Sentence

We have concluded that the trial court did not apply either section 1385, subdivision (c), or section 1170, subdivision (b), when it imposed the five-year upper term for the GBI enhancement. Further, the record does not clearly indicate that the court would have made the same sentencing choices had it applied these laws. Thus, the five-year term is infirm and will be stricken. As a result, " ' a full resentencing as to all counts is appropriate, so the trial court can exercise its discretion in light of the changed

---

[10] Assuming arguendo that defense counsel did not adequately object, we do not find forfeiture. The trial court repeatedly stated and expressly found that none of the new sentencing laws identified by defendant, which included section 1170, subdivision (b), applied to defendant. Given the court's statements and ruling, we find that further objection by defense counsel would have been futile. (*People v. Wilson* (2008) 44 Cal.4th 758, 793 ["A litigant need not object, however, if doing so would be futile"].)

circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) We express no opinion as to how the trial court should exercise its discretion during the resentencing process.[11] (*People v. Jimenez* (2019) 32 Cal.App.5th 409, 426.)

## DISPOSITION

This matter is remanded for the trial court to conduct a full resentencing, including consideration of the amendments to Senate Bill 81 and Senate Bill 357 to sections 1385 and 1170, respectively. The judgment is otherwise affirmed.

POOCHIGIAN, J.

WE CONCUR:

LEVY, Acting P. J.

FRANSON, J.

---

[11] We do note, however, that the prohibition against double jeopardy " 'generally prohibits the court from imposing a greater sentence on remand following an appeal.' " (*People v. Torres* (2008) 163 Cal.App.4th 1420, 1432; see *People v. Craig* (1998) 66 Cal.App.4th 1444, 1448 ["after successful appeal of a conviction a defendant may not upon reconviction be subject to an aggregate sentence greater than imposed at the first trial"].)